UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND,<br><br>Plaintiff,<br><br>v.<br><br>DAVID BERNHARDT, et al.,<br><br>Defendants. | Case No. 19-cv-06812-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 21 |

Before the Court is U.S. Secretary of the Interior David Bernhardt, Secretary of Commerce Wilbur Ross, U.S. Fish and Wildlife Service, and National Marine Fisheries Service ("Federal Defendants")'s motion to dismiss. ECF No. 21. The Court will grant the motion.

I.  BACKGROUND[1]

   A.  **Endangered Species Act**

"The Endangered Species Act ("ESA") was enacted in 1973 to prevent the extinction of various fish, wildlife, and plant species." *Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F.3d 969, 974 (9th Cir. 2003). The Act aims "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved" and "to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). "The responsibility for administration and enforcement of the ESA lies with the Secretaries of Commerce and Interior, who have delegated the responsibility to the [National Marine Fisheries Service ("NMFS")] with respect to marine species, and to the Fish

---

[1] In reviewing Federal Defendants' Rule 12(b)(1) motion to dismiss for lack of jurisdiction, the Court takes the allegations in the plaintiffs' complaint as true. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

and Wildlife Service ("FWS") with respect to terrestrial species." *Turtle Island*, 340 F.3d at 973-74 (citing 50 C.F.R. § 402.01).

To accomplish its purposes, the Act "sets forth a comprehensive program to limit harm to endangered species within the United States." *California ex rel. Lockyer v. U.S. Dept. of Agriculture*, 575 F.3d 999, 1018 (9th Cir. 2009). Section 4 of the Act requires NMFS and FWS (collectively "the Services") to identify endangered and threatened species and designate their "critical habitats." 16 U.S.C. 1533(a)(1)-(3). Section 7 "imposes a procedural duty on federal agencies to consult with either the [NMFS] or the FWS before engaging in a discretionary action, which may affect listed species."[2] *Turtle Island*, 340 F.3d at 974 (citing 16 U.S.C. § 1536(a)(2); 50 C.F.R. §§ 402.14, 402.01(b)). This consultation procedure aims to allow the Services "to determine whether the federal action is likely to jeopardize the survival of a protected species or result in the destruction of its critical habitat, and if so, to identify reasonable and prudent alternatives that will avoid the action's unfavorable impacts." *Id.* (citing 16 U.S.C. § 1536(b)(3)(A)). Section 9 prohibits the "take" (e.g. killing, harassing, harming, or collecting) of listed endangered fish and wildlife species and prohibits other actions with respect to listed endangered plant species. 16 U.S.C. §§ 1532, 1538. Section 4(d) authorizes the extension of Section 9 prohibitions to threatened species. *Id.* § 1533(d).

B.   **Regulatory History**

"In 1975, two years after the ESA was enacted, FWS exercised its authority under Section 4(d) to issue a regulation extending the 'take' prohibitions in Section 9 of the ESA applicable to endangered species, 16 U.S.C. § 1538(a)(1), to all threatened species." 50 C.F.R. § 17.31(a) (2018). During the 1980s, the Services adopted joint regulations for implementation of Sections 4 and 7 of the ESA. *See, e.g.,* 45 Fed. Reg. 13,010 (Feb. 27, 1980); 49 Fed. Reg. 38,900 (Oct. 1, 1984); 51 Fed. Reg. 19,926 (June 3, 1986). The ESA Regulations have not been substantially

---

[2] "When the acting agency is either the [NMFS] or the FWS, the obligation to consult is not relieved, instead, the agency must consult within its own agency to fulfill its statutory mandate." *Turtle Island*, 340 F.3d at 974 (citing 16 U.S.C. § 1536(a)(2); 50 C.F.R. §§ 402.14, 402.01(b)).

amended since that time. *See* ECF No. 1 ¶ 2, 33, 57, 59; *see also* 81 Fed. Reg. 7,439 (Feb. 11, 2016); 81 Fed. Reg. 7,214 (Feb. 11, 2016); 80 Fed. Reg. 26,832 (May 11, 2015).

On July 25, 2018 the Services issued three proposed regulatory packages revising the ESA regulations. ECF No. 1 ¶¶ 52, 68-76; 83 Fed. Reg. 35,193 (July 25, 2018) ("Proposed Listing Rule"); 83 Fed. Reg. 35,178 (July 25, 2018) ("Proposed Interagency Consultation Rule"); 83 Fed. Reg. 35,174 (July 25, 2018) ("Proposed 4(d) Rule") (collectively, the "Proposed Rules"). The three proposed regulatory changes sought to carry out Executive Order 13777, which directs federal agencies to "eliminate allegedly 'unnecessary regulatory burdens.'" *Id.* ¶ 51; 82 Fed. Reg. 12,285 (Mar. 1, 2017). The Services characterized the Proposed Rules as changes to assist and increase clarity and transparency in implementation of the ESA. ECF No. 38 ¶ 5. After accepting comments on the proposed revisions, *id.* ¶¶ 54, 56, the Services issued three Final Rules: (1) the Listing Rule, 84 Fed. Reg. 45,020; (2) the Interagency Consultation Rule, 84 Fed. Reg. 44,976; and (3) the 4(d) Rule, 84 Fed. Reg. 44,753. *Id.* ¶¶ 57-76.

### C. Procedural Background

On October 21, 2019, nonprofit organization Animal Legal Defense Fund ("ALDF") brought this action to challenge the Services' promulgation the Final Rules, which they contend "contradict the clear conservation mandate of the ESA." ECF No. 1 ¶¶ 3-8. ALDF alleges that, "the Services [] failed to consider and disclose [] significant environmental impacts" and promulgated regulatory revisions which "are contrary to the plain language of the ESA, lack any reasoned basis, and are arbitrary and capricious." *Id.* ¶¶ 5-7. In particular, the Complaint alleges two claims for relief: (1) "issuance of regulations that are arbitrary, capricious, and not in accordance with law," in violation of the Administrative Procedure Act ("APA"); and (2) "failure to prepare an adequate environmental impact statement," in violation of the APA and the National Environmental Policy Act ("NEPA"). *Id.* ¶¶ 83-103.

On December 6, 2019, Federal Defendants moved to dismiss ALDF's Complaint for lack of jurisdiction. ECF No. 21. ALDF opposes this motion, ECF No. 39, and Federal Defendants have filed a reply, ECF No. 48.

## II. LEGAL STANDARD

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "One component of the case-or-controversy requirement is standing, which requires a plaintiff to demonstrate the now-familiar elements of injury in fact, causation, and redressability." *Id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992)). A defendant may attack a plaintiff's assertion of jurisdiction by moving to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004); *see also* 5B Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1350 (3d ed.2004) ("A motion to dismiss an action under Federal Rule 12(b)(1) . . . raises the fundamental question whether the federal district court has subject matter jurisdiction over the action before it.")

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. Where, as here, defendants make a facial attack,[3] the court assumes that the allegations are true and draws all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted); *Hyatt v. Yee*, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017). A court addressing a facial attack must confine its inquiry to the allegations in the complaint. *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

## III. DISCUSSION

Federal Defendants request that the Court dismiss ALDF's Complaint because ALDF "lack[s] Article III standing and the claims are not ripe for judicial review." ECF No. 21 at 2, 12.

---

[3] Defendants "move to dismiss the complaints on facial grounds." ECF No. 33 at 24.

4

Article III standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, ––– U.S. ––––, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Because "[t]he party invoking federal jurisdiction bears the burden of establishing these elements," they are "an indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561. Accordingly, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518, (1975)). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, ––– U.S. ––––, 137 S. Ct. 1645, 1650 (2017) (citation omitted).

An organization has standing to bring suit on behalf of its members when (1) "its members would otherwise have standing to sue in their own right," (2) "the interests at stake are germane to the organization's purpose," and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 482-83 (9th Cir. 2011) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 181, (2000)). An organization may also have "direct standing" to "seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012) (internal quotation mark and citation omitted); *Physicians for Integrity in Medical Research, Inc. v. Commissioner*, No. CV 11-08334 GAF (FMOx), 2012 WL 12882760, at *2 (citing *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). Where an organization seeks to sue on its own behalf, the Court "conduct[s] the same [standing] inquiry as

in the case of an individual." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982).

### A.  Standing on Behalf of Members

Federal Defendants argue that ALDF cannot demonstrate standing on behalf of its members because it does not "allege any specific *facts*" as to how members are harmed by the Final Rules. *See* ECF No. 33 at 26. The Court agrees.

"It is common ground that [] organizations can assert the standing of their members." *Summers v. Earth Inst.*, 555 U.S. 488, 494 (2009). To show the concrete and particularized injury that standing requires, an organization "must provide 'specific allegations establishing that at least one identified member [has] suffered or would suffer harm.'" *W. Watersheds Project v. Kraayenbrink*, 632 F.3d at 483 (citing *Summers*, 555 U.S. at 498). "While generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice." *Summers*, 555 U.S. at 494 (citing *Sierra Club v. Morton*, 405 U.S. 727, 734-36 (1972)).

ALDF alleges that its members "frequent natural areas for the purposes of observing threatened and endangered species and other recreational and professional pursuits." ECF No. 1 ¶¶ 15-16. While ALDF claims that its "members" derive "recreational, aesthetic, and conservation benefits and enjoyment from the proper treatment and conservation of threatened and endangered species," *id.* ¶ 15, the Complaint fails to show that "at least one *identified* member [has] suffered or would suffer harm." *W. Watersheds Project v. Kraayenbrink*, 632 F.3d at 483 (9th Cir. 2011) (emphasis added) (citation omitted). Therefore, ALDF fails to demonstrate injury-in-fact with respect to its members. *Summers*, 555 U.S. at 498 ("[O]ur prior cases . . . have required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm."); *Campbell v. Jilik*, No. C09-1305-JCC, 2010 WL 2605239, at *5 (W.D. Wash. June 25, 2010) ("Because the complaint fails to identify any of the group's members, the group cannot invoke this Court's jurisdiction in order to litigate the rights of injured members."); *but see Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) ("We are not convinced that *Summers* . . . stands for the proposition that an injured member of an organization must *always* be specifically identified in order to establish Article III standing

for the organization. . . . However, even if *Summers* and other cases are read to require that an organization always identify by name individual members who have been or will be injured in order to satisfy Article III, the district court erred in dismissing the complaint without granting leave to amend.") (emphasis added).

In support of their opposition to Federal Defendants' motion to dismiss, ALDF filed several declarations which identify members who allegedly "reside near and visit facilities that exhibit members of threatened and endangered species, as well as species that may be listed as threatened or endangered, and their critical habitat." ECF No. 39 at 17; *see* ECF Nos. 39-1, 39-2, 39-3, 39-4, 39-5. These declarations also identify the particular species of concern to the declarants and the actual or proposed listing status of those species. *See id.* The Court cannot consider these declarations in evaluating Defendants' motion, however. "[D]efendants' motion is a facial challenge, which means the court may look only to the complaint and any documents attached thereto; it cannot consider extrinsic evidence." *EduMoz, LLC v. Republic of Mozambique*, No. CV 13-02309 MMM (CWx), 2014 WL 12802921, at *8 (C.D. Cal. July 24, 2014); *see Savage*, 343 F.3d at 1039 n.2 (9th Cir. 2003) (A court addressing a facial attack "confin[es] the inquiry to allegations in the complaint."); *Cal. Sportfishing Protection Alliance v. All Star Auto Wrecking, Inc.*, 860 F. Supp. 2d 1144, 1150-51 ("Though both parties have supplied the Court with extrinsic evidence, Defendants' motion to dismiss clearly attacked the sufficiency of the allegations in the FAC to establish jurisdiction on its face."); ECF No. 33 at 24 ("Here, we move to dismiss the complaints on facial grounds."). Therefore, the Complaint fails to establish a concrete and particularized injury in fact with respect to ALDF's members.

## B. Direct Standing

An organization suing on its own behalf can establish an injury when it suffers "'both a diversion of its resources and a frustration of its mission.'" *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,* 624 F.3d 1083, 1088 (9th Cir. 2010) (quoting *Fair Hous. of Marin v. Combs,* 285 F.3d 899, 905 (9th Cir. 2002)). "It cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *Id.* (citing *Fair Emp't Council v. BMC Mktg. Corp.,* 28

7

F.3d 1268, 1276-77 (D.C. Cir.1994)). "However, when an organization is forced to divert its resources to 'identify and counteract' unlawful activity that frustrates its mission, 'there can be no question that [the] organization has suffered an injury in fact' sufficient 'to warrant [its] invocation of federal-court jurisdiction.'" *Animal Legal Defense Fund v. Great Bull Run, LLC*, No. 14-cv-01171-MEJ, 2014 WL 2568685 (quoting *Havens Realty Corp,* 455 U.S. at 378-79); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 943 (9th Cir. 2011) (en banc).

ALDF's Complaint describes the organization's mission as "protecting the lives and advancing the interests of animals through the legal system by persistently advocating for the protection of animals used and sold in commercial enterprises, as well as their wild counterparts." ECF No. ¶ 12. The Complaint provides no allegations, however, that ALDF has been forced to divert any resources from its core organizational functions to combat the Services' conduct. *See Smith v. Pacific Properties and Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) (finding organizational standing where Plaintiff had "to divert its scarce resources from other efforts" so it could "monitor the violations and educate the public regarding the discrimination"); *Nat'l Council of La Raza*, 800 F.3d at 1040 (finding organizational standing where, "[b]ut for defendants' violations . . . Plaintiffs 'would be able to allocate substantial resources to other activities central to [their] mission[s].'"). Therefore, ALDF does not show cognizable organizational harm and cannot sue on its own behalf. *Am. Diabetes Association v. U.S. Dept. of the Army*, 938 F.3d 1147, 1154-55 (9th Cir. 2019) (organization lacked direct standing where it was "merely going about its business as usual" rather than "diverting[] any resources").

### C.     Procedural Standing

"To establish an injury-in-fact, a plaintiff challenging the violation of a procedural right must demonstrate (1) that he has a procedural right that, if exercised, could have protected his concrete interests, (2) that the procedures in question are designed to protect those concrete interests, and (3) that the challenged action's threat to the plaintiff's concrete interests is reasonably probable." *California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018) (citing *Citizens for Better Forestry*, 341 F.3d 961, 969-70 (2003)).

ALDF argues that it "independently has standing" because "its procedural rights and those of its members are being abridged as a result of the Services' issuance of the final rules without compliance with the APA and NEPA." ECF No. 39 at 23; ECF No. 1 ¶¶ 84-92, 94-103. However, "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers*, 555 U.S. at 496 ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction."). Because ALDF has failed to allege an underlying concrete interest with respect to its members or itself, it cannot demonstrate injury-in-fact for its procedural claims. *See Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1260 (9th Cir. 2010) ("[P]rocedural injury, standing on its own, cannot serve as an injury-in-fact.").

## CONCLUSION[4]

For the foregoing reasons, Federal Defendants' motion to dismiss is granted. ALDF may file an amended complaint within 21 days of the issuance of this order.

**IT IS SO ORDERED.**

Dated: May 18, 2020



JON S. TIGAR
United States District Judge

---

[4] Because the Court has found that ALDF lacks standing, it need not address whether ALDF's claims are ripe for judicial review.